Case No. 26-4388

# United States Court of Appeals for the Ninth Circuit

Z.A., A MINOR, BY AND THROUGH THEIR PARENT, A.A., ET AL.,

*Plaintiffs-Appellees,*

v.

TODD BLANCHE, ACTING ATTORNEY GENERAL, IN HIS OFFICIAL CAPACITY;
UNITED STATES DEPARTMENT OF JUSTICE,

*Defendants-Appellants.*

On Appeal from the United States District Court,
Northern District of California,
Case No. 5:26-cv-04998-PCP,
Hon. P. Casey Pitts

## OPPOSITION TO MOTION TO STAY

**NATIONAL CENTER FOR LGBTQ RIGHTS**
Shannon P. Minter
*sminter@nclrights.org*
Christopher F. Stoll
*cstoll@nclrights.org*
Rachel Berg
*rberg@nclrights.org*
1401 21st Street #11548
Sacramento, California 94102
Telephone: (415) 392-6257

**ROSEN BIEN GALVAN & GRUNFELD LLP**
Gay Crosthwait Grunfeld
*ggrunfeld@rbgg.com*
Kara J. Janssen
*kjanssen@rbgg.com*
101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
Telephone: (415) 433-6830
Facsimile: (415) 433-7104

*Attorneys for Plaintiffs-Appellees*
*(additional counsel on inside cover)*

**LOWELL & ASSOCIATES, PLLC**
Abbe David Lowell
*ALowellpublicoutreach@lowellandassociates.com*
Caleb Hayes-Deats
*CHayes-Deats@lowellandassociates.com*
Schuyler Standley
*Sstandley@lowellandassociates.com*
1250 H Street, N.W., Suite 250
Washington, D.C. 20005
Telephone: (202) 964-6110
Facsimile: (202) 964-6116

**GLBTQ ADVOCATES AND DEFENDERS (GLAD LAW)**
Joshua Rovenger
*jrovenger@gladlaw.org*
Donovan Bendana
*dbendana@gladlaw.org*
18 Tremont Street, Suite 950
Boston, Massachusetts 02108
Telephone: (617) 426-1350

*Attorneys for Plaintiffs-Appellees*

# TABLE OF CONTENTS

**Page**

INTRODUCTION .......... 1

STATEMENT .......... 3

LEGAL STANDARD .......... 8

ARGUMENT .......... 9

I. DOJ HAS NOT SHOWN IRREPARABLE HARM .......... 9

II. DOJ HAS NOT MADE A STRONG SHOWING OF LIKELIHOOD OF SUCCESS .......... 12

A. DOJ's Arguments Contradict Longstanding Practice Permitting Plaintiffs to Enjoin Constitutional Violations .......... 13

B. DOJ Is Violating Plaintiffs' Fifth Amendment Rights .......... 19

III. THE BALANCE OF EQUITIES AND PUBLIC INTEREST DISFAVOR A STAY .......... 23

CONCLUSION .......... 24

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Al Otro Lado v. Wolf*,
952 F.3d 999 (9th Cir. 2020) .......... 9, 10, 12

*Allen v. Ornoski*,
435 F.3d 946 (9th Cir. 2006) .......... 17, 18, 21

*Armstrong v. Exceptional Child Ctr., Inc.*,
575 U.S. 320 (2015).......... 2, 6, 13, 14, 15, 17, 18

*Branzburg v. Hayes*,
408 U.S. 665 (1972)..........20

*Church of Scientology of Cal. v. United States*,
506 U.S. 9 (1992)..........24

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013)..........19

*Cmty. Legal Servs. in E. Palo Alto v. United States Dep't of Health & Hum. Servs.*,
137 F.4th 932 (9th Cir. 2025) ..........9, 10

*Coe v. Blanche*, No. 1:26-cv-4641-KPF (S.D.N.Y. July 9, 2026)...... 1, 5, 13, 20, 23

*Corr. Servs. Corp. v. Malesko*,
534 U.S. 61 (2001)..........13

*Dickinson v. Trump*, 174 F.4th 634 (9th Cir. 2026) .......... 10, 11

*Dobbs v. Jackson Women's Health Organization*,
597 U.S. 215 (2022).......... 19, 21

*Doe #1 v. Trump*,
957 F.3d 1050 (9th Cir. 1050) .......... 10, 12, 21

*Doe v. Bonta*,
101 F.4th 633 (9th Cir. 2024) ..........19

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*,
561 U.S. 477 (2010).......... 13, 14, 17

*In re 2025 UPMC Subpoena*,
No. 2:25-mc-01069, 2025 WL 3724705 (W.D. Pa. Dec. 24, 2025) ..........4

*In re Admin. Subpoena 25-1431-032 to Rhode Island Hosp.*,
No. 1:26-mc-0007, 2026 WL 1392565 (D.R.I. May 14, 2026) ......... 4, 13, 20

*In re Admin. Subpoena No. 25-1431-019*,
800 F. Supp. 3d 229 (D. Mass. 2025).......................................... 3, 13, 20, 22

*In re Administrative Subpoena 25-1431-032*, 4:26-MC-00006-O (N.D. Tex. May 12, 2026).......................................................................................... 10, 16

*In re Children's Nat'l Hosp.*,
No. 1:25-cv-03780, 2026 WL 160792 (D. Md. Jan. 21, 2026).......... 3, 13, 20

*In re Clean Water Act Rulemaking*,
60 F.4th 583 (9th Cir. 2023) ..........................................................................10

*In re Dep't of Just. Admin. Subpoena No. 25-1431-030*,
No. 25-mc-00063-SKC-CYC, 2026 WL 33398 (D. Colo. Jan. 5, 2026)........4

*In re Grand Jury Proceedings*,
801 F.2d 1164 (9th Cir. 1986) .......................................................................20

*In re Subpoena Duces Tecum No. 25-1431-016*,
No. 2:25-mc-00041, 2025 WL 3562151 (W.D. Wash. Sept. 3, 2025)............4

*In re Subpoena No. 25-1431-014*,
810 F. Supp. 3d 555 (E.D. Pa. 2025)..............................................................3

*Leiva-Perez v. Holder*,
640 F.3d 962 (9th Cir. 2011) ...........................................................................9

*Maryland v. King*,
567 U.S. 1301 (2012).......................................................................................10

*Melendres v. Arpaio*,
695 F.3d 990 (9th Cir. 2012) ................................................................... 16, 24

*New York Times v. Gonzales*,
459 F.3d 160 (2d Cir. 2006) ......................................................................6, 14

*NIH v. Am. Public Health Ass'n*,
145 S. Ct. 2658 (2025)....................................................................................18

*Nken v. Holder*,
556 U.S. 418 (2009)................................................................... 8, 9, 12, 23

*Oregon Nat. Desert Ass'n v. U.S. Forest Serv.*,
550 F.3d 778 (9th Cir. 2008) .........................................................................21

*QueerDoc, PLLC v. U.S. Dep't of Just.*,
807 F. Supp. 3d 1295 (W.D. Wash. 2025), *appeal argued*, No. 25-7384 (9th Cir. Mar. 6, 2026)...........................................................................3

*Susan B. Anthony List v. Driehaus*,
573 U.S. 149 (2014).......................................................................................19

*Trump v. CASA, Inc.*,
606 U.S. 831 (2025).......................................................................................17

*Tucson Woman's Clinic v. Eden*,
379 F.3d 531 (9th Cir. 2004), *abrogated on other grounds by Dobbs v. Jackson Women's Health Organization*, 597 U.S. 215 (2022) .............. 19, 21

*United States v. Calandra*,
414 U.S. 338 (1974).....................................................................................20

*United States v. Hubbell*,
530 U.S. 27 (2000).......................................................................................15

*United States v. Wells*,
29 F.4th 580 (9th Cir. 2022) .........................................................................21

*Washington v. Trump*,
847 F.3d 1151 (9th Cir. 2017) .......................................................................10

*Whalen v. Roe*,
429 U.S. 589 (1977).....................................................................................21

**STATUTES**

18 U.S.C. § 3486(c) .......................................................................................17

**RULES**

Fed. R. Crim. P. 17.........................................................................................15

**OTHER AUTHORITIES**

Jennifer Lambert, Connecticut Children's Reaches Agreement with DOJ to End Gender-Affirming Care, NBC Connecticut (Aug. 6, 2026) .....................4

Richard H. Fallon, Jr., *Constitutional Remedies: In One Era and Out the Other*, 136 Harv. L. Rev. 1300, 1311 (2023) ................................................17

Terri Langford & Colleen DeGuzman, Texas Children's Hospital Must Create Country's First "Detransition Clinic" Under Legal Settlement with State, Tex. Trib. (May 15, 2026)............................................................4

## INTRODUCTION

Ten district courts have found that Defendants-Appellants (collectively, "DOJ") are seeking the protected healthcare information ("PHI") of transgender minors for an improper purpose. DOJ initially sought minors' PHI through administrative subpoenas. After at least eight district courts quashed those subpoenas, DOJ abruptly withdrew its outstanding administrative subpoenas to hospitals in New York and California and reissued them as grand jury subpoenas from the Northern District of Texas. The district court recognized DOJ's conduct for what it was: "forum shopping" designed to "avoid another loss." A115. It found "virtually no chance" that information about the care *every* transgender minor received at Lucile Salter Packard Children's Hospital ("Packard") in California was relevant to an "offense chargeable in the Northern District of Texas." A123. The Southern District of New York reached a similar conclusion. *Coe v. Blanche*, No. 1:26-cv-4641-KPF, ECF 77 (S.D.N.Y. July 9, 2026).

The district court's preliminary injunction did not target any particular subpoena, but instead protected a discrete class of California patients from "what courts around the country have found to be a bad-faith campaign." A120. It found DOJ was violating that class's Fifth Amendment rights by seeking the "most sensitive information that could be collected about a person" even though it had "no discernible relevance" to any offense, much less one in Texas. A123, A125.

DOJ is not entitled to a stay of that injunction pending appeal for three independent reasons. First, it offers no evidence of irreparable harm. Despite taking twelve days to file its stay motion below, DOJ provided no evidence of any supposed harm it would suffer during the pendency of this appeal, instead relying on broad assertions that this Court has rejected as too generic to support a stay.

Second, DOJ has not shown a strong likelihood of success. It entirely ignores the history of its bad-faith conduct that led nearly every district court to consider the issue to reach the same conclusion the district court reached here. "The ability to sue to enjoin unconstitutional actions by state and federal officers . . . trac[es] back to England." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015). Circuit precedent makes clear that DOJ's conduct violates the Fifth Amendment, which constrains grand jury subpoenas no less than other government action.

Finally, the balance of equities and the public interest weigh heavily against a stay. A stay would allow DOJ to obtain the provisional class's information, inflicting harm that "cannot be undone" and making effective final relief impossible. SA67.[1] "And the public interest always favors preventing the violation of individuals' constitutional rights." *Id.*

[1] Citations to "SA" refers to the attached Supplemental Addendum.

## STATEMENT

A. In January 2025, President Trump "issued an executive order that expressly aimed to 'end' gender-transition-related medical care for minors." A89. In April, the Attorney General directed DOJ to *civilly* investigate such care for supposed violations of the Food, Drug, and Cosmetic Act ("FDCA") and the False Claims Act. A89-90. In July, DOJ issued "more than 20 administrative subpoenas to medical centers providing gender-affirming care." A90. Those subpoenas sought "documents that would 'identify each patient'" receiving transgender healthcare, together with documents relating to their "'clinical indications'" and "'diagnoses.'" A91.

At least eight district courts quashed the administrative subpoenas in whole or in part, concluding that "DOJ had failed to articulate any basis for investigating the hospitals" and that it was "'utterly unclear' how such sensitive and identifying patient records related to the hospitals' purportedly unlawful conduct." A92 (quoting *In re Children's Nat'l Hosp.*, No. 1:25-cv-03780, 2026 WL 160792, at *3, 6-8 (D. Md. Jan. 21, 2026)); *In re Admin. Subpoena No. 25-1431-019*, 800 F. Supp. 3d 229, 236-39 (D. Mass. 2025); *QueerDoc, PLLC v. U.S. Dep't of Just.*, 807 F. Supp. 3d 1295, 1302-04 (W.D. Wash. 2025), *appeal argued*, No. 25-7384 (9th Cir. Mar. 6, 2026); *In re Subpoena No. 25-1431-014*, 810 F. Supp. 3d 555, 588-607 (E.D. Pa. 2025); *In re Subpoena Duces Tecum No. 25-1431-016*, No.

2:25-mc-00041, 2025 WL 3562151, at *9-13 (W.D. Wash. Sept. 3, 2025); *In re 2025 UPMC Subpoena*, No. 2:25-mc-01069, 2025 WL 3724705, at *1-3 (W.D. Pa. Dec. 24, 2025); *In re Admin. Subpoena 25-1431-032 to Rhode Island Hosp.*, No. 1:26-mc-0007, 2026 WL 1392565, at *6-10 (D.R.I. May 14, 2026); *In re Dep't of Just. Admin. Subpoena No. 25-1431-030*, No. 25-mc-00063-SKC-CYC, 2026 WL 33398, at *3-7 (D. Colo. Jan. 5, 2026).[2] "The lack of connection between DOJ's stated goals and the patient records it demanded" led courts to conclude that it sought to "harass and intimidate hospitals to stop providing [transgender] care, and to dissuade patients from seeking such care." A92 (cleaned up).

DOJ responded to those setbacks by withdrawing the administrative

[2] DOJ points to settlements with Texas Children's Hospital and Cleveland Clinic. Mot. 3-4 & n.1. But those settlements merely underscore the coercive effect of DOJ's improper campaign. Texas Children's publicly stated that it "ha[s] been compliant with all laws," but settled "to protect [its] resources from endless and costly litigation." Terri Langford & Colleen DeGuzman, Texas Children's Hospital Must Create Country's First "Detransition Clinic" Under Legal Settlement with State, Tex. Trib. (May 15, 2026), https://www.texastribune.org/2026/05/15/texas-children-transgender-transition-settlement-attorney-general/. Another hospital that recently settled emphasized that it did so "without disclosing any protected patient information to the US government." Jennifer Lambert, Connecticut Children's Reaches Agreement with DOJ to End Gender-Affirming Care, NBC Connecticut (Aug. 6, 2026), https://www.nbcconnecticut.com/news/local/connecticut-childrens-reaches-agreement-with-doj-to-end-gender-affirming-care/3762168/. Such settlements thus say nothing about the relevance of patient information to any legitimate investigation. They show only that DOJ intends to "harass and intimidate hospitals to stop providing [transgender] care." A92 (cleaned up).

subpoena it had served on Packard and issuing a grand jury subpoena that sought the same patient information "under the seal of the Northern District of Texas." A93. The district court agreed with other courts that DOJ's conduct attempted to "'recast discredited civil administrative subpoenas as grand jury subpoenas from a hand-picked faraway jurisdiction in order to minimize judicial review of constitutional infirmities.'" A94 (quoting *Coe*, No. 26-cv-4641, ECF 77 at 8).

B. Plaintiffs-Appellees are patients of Packard and their parents. A5-A6. Their amended complaint sought to bar DOJ from obtaining their PHI and that of other similarly situated patients in violation of the Fifth Amendment. A94-A95.

On July 2, 2026, the Court certified a provisional class of minor patients who received transgender healthcare at Packard and entered a preliminary injunction that barred DOJ from "obtaining" records that would "identify members of the provisional class as having sought or received gender-affirming care," disclose their "clinical indications" and "diagnoses," "describe the gender-affirming care" they received, or "relate to the provision of informed consent" for such care. A128. "DOJ's demand for Packard's patient records" raised common questions for all class members, allowing them to seek relief applicable to the "whole" class. A103-A107.

The district court found that Plaintiffs had established the availability of injunctive relief for DOJ's constitutional violations. A109-A116. The Supreme

Court has "long held" that federal courts may enjoin "violations of federal law by federal officials." A109 (quoting *Armstrong*, 575 U.S. at 326). Federal Rule of Criminal Procedure 17 did not demonstrate any congressional "intent to foreclose" such equitable relief. A110-111. Plaintiffs "do not seek to quash a particular grand jury subpoena," but instead "challenge DOJ's broader campaign to procure provisional class members' private health information." *Id.* "Rule 17 lacks a close relationship to any particular substantive rule of law" and "contains no other indicia of an intent to foreclose constitutional claims." A112-A113. The Second Circuit, moreover, has permitted "a declaratory action in one district to collaterally challenge DOJ's attempt to obtain the plaintiff's confidential information" by issuing a grand jury subpoena in another district. A113 (citing *New York Times v. Gonzales*, 459 F.3d 160, 165-67 (2d Cir. 2006).

The district court rejected DOJ's appeals to comity, finding that any risk to comity had been "manufactured by DOJ" as it sought to "avoid another loss" and route challenges to a "forum that DOJ deems friendlier." A115. "A grand jury subpoena issues without judicial review," and the subpoena here had "no apparent relevance to any crime indictable in Texas." A114 Regardless, "DOJ remains free to proceed with its investigation, including by obtaining other records from Packard." *Id.*

The district court then found Plaintiffs "likely to succeed" on their Fifth

Amendment privacy claim. A116. Applying this Court's test for balancing Fifth Amendment privacy interests against DOJ's need for information, the district court first found it undisputed that the information at issue is "highly sensitive." *Id.* The "requirements of grand jury secrecy" did not reduce the "potential harm" of disclosure, because it is "little solace to transgender minors that the only officials with access to their medical records are those working to terminate gender-affirming care based on clear hostility to transgenderism." A119-A120. Finally, DOJ had no "legitimate need" for the information. A121. Any charges must be brought "'where the crime was committed.'" A123-A124. DOJ's own guidance limited grand jury powers "'by its function toward possible return of an indictment.'" A121. There was "virtually no chance that the information [sought] is relevant to an offense chargeable" in Texas. A123.

Finally, the Court found that factors other than likelihood of success weighed in favor of a preliminary injunction. A125-A128. Plaintiffs would suffer irreparable harm from not only deprivation of a constitutional right, but also disclosure of the "'most sensitive information that could be collected about a person.'" A125. Such disclosure would deter provisional class members from seeking healthcare and could "out" them to federal officials that "sought to identify, to demonize, and ultimately to eradicate an entire population of transgender people." A126. DOJ identified no offsetting harm. Its own "conduct"

suggested that any need it has for class members' information is "not urgent," because DOJ "took no action to compel disclosure of such information for nine months after first serving Packard with its administrative subpoena." A127. Moreover, the preliminary injunction does "nothing to prevent DOJ from seeking other records that might actually be relevant" to any criminal investigation. *Id.*

C. DOJ did not move to stay the preliminary injunction until July 14, 2026, twelve days after the injunction issued. SA61. When DOJ moved, it provided no evidence purporting to identify irreparable harm it would suffer during the pendency of this appeal. *See id.* On July 31, the district court denied DOJ's stay motion. The district court had invited DOJ to seek authorization to present information about its investigation to the district court *in camera*. SA65-66. "More than four weeks later," DOJ had taken "no action," leading the district court to conclude DOJ "lacks evidence to support its claimed interest or to demonstrate irreparable harm to that interest," much less harm it would suffer before its appeal is resolved. SA66. The remaining factors also weighed against a stay. SA66-67.

## LEGAL STANDARD

" 'A stay is not a matter of right;' " the "party requesting a stay pending appeal bears the burden of showing that the circumstances justify an exercise of that discretion." *Nken v. Holder*, 556 U.S. 418, 433-34 (2009). Courts consider four factors: "(1) whether the [Government] has made a strong showing that [it] is

likelihood of success on the merits; (2) whether the [appellants] will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties … and (4) where the public interest lies." *Id.* The first two are the "most critical," and the last two are considered only if the first two factors are "satisfi[ed]." *Nken*, 556 U.S. at 434-35.

## ARGUMENT

### I. DOJ HAS NOT SHOWN IRREPARABLE HARM

If a movant "has not made a certain threshold showing regarding irreparable harm . . . then a stay may not issue." *Leiva-Perez v. Holder*, 640 F.3d 962, 965 (9th Cir. 2011) (per curiam). "[S]imply showing some possibility of irreparable injury" is insufficient. *Nken*, 556 U.S. at 434 (cleaned up). The applicant must show "irreparable injury is likely to occur during the period before the appeal is likely to be decided." *Al Otro Lado v. Wolf*, 952 F.3d 999, 1007 (9th Cir. 2020).

DOJ has not made this threshold showing. Despite waiting twelve days to seek a stay in the district court, DOJ "provides no evidence to support its claims of irreparable injury." *Cmty. Legal Servs. in E. Palo Alto v. United States Dep't of Health & Hum. Servs.*, 137 F.4th 932, 942-43 (9th Cir. 2025). The district court "invited" DOJ to seek permission to disclose information about its investigation *in camera*. SA66. The Northern District of Texas has "granted the Government's previous motion to disclose information" for *in camera* review. *In re*

*Administrative Subpoena 25-1431-032*, 4:26-MC-00006-O, ECF No. 17 at 2 (N.D. Tex. May 12, 2026). But DOJ took no action in this case for "[m]ore than four weeks," leading the district court to conclude it "lacks evidence" to "demonstrate irreparable harm." SA66. DOJ's failure to "cite any evidence at all" precludes a finding that "irreparable injury" to the government " 'is the more probable or likely outcome' here." *Cmty. Legal Servs.*, 137 F.4th at 942-43 (quoting *Al Otro Lado*, 952 F.3d at 1007).

DOJ argues that a government "suffers irreparable injury when it is forestalled from enforcing its own laws." Mot. 21 (quoting *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, J., in chambers)). But this Court has explained that the "harm of such a perceived institutional injury is not 'irreparable,' because the government 'may yet pursue and vindicate its interests in the full course of this litigation.' " *Doe #1 v. Trump*, 957 F.3d 1050, 1059 (9th Cir. 1050) (quoting *Washington v. Trump*, 847 F.3d 1151, 1168 (9th Cir. 2017) (per curiam)). Otherwise, "no act of the executive branch asserted to be inconsistent with" the Constitution "could be the subject of a preliminary injunction." *Id.*; *see also In re Clean Water Act Rulemaking*, 60 F.4th 583, 594 (9th Cir. 2023) (courts' "equitable authority to 'enjoin unconstitutional actions' " by federal officers is "well settled").

*Dickinson v. Trump* is not to the contrary. 174 F.4th 634 (9th Cir. 2026). There, the district court entered a "grossly overbroad and unworkable" preliminary

injunction that impeded ICE officers' ability to "protect themselves and the Portland ICE facility from attack and disruption." *Id.* at 645, 648. The record contained "evidence of officers being threatened and assaulted," rendering the injunction at issue "extremely dangerous to both federal officers and the public." *Id.* at 644, 649. Here, in contrast, the preliminary injunction bars DOJ from seeking a specific, limited category of patient information in California that the district court found had "virtually no chance" of proving "relevant to an offense chargeable in the Northern District of Texas," A123-A124, a finding DOJ has "taken no action" to rebut, SA66. The district court did not transform itself into the investigation's "supervisor." Mot. 22. It found a complete failure to prove any legitimate need for highly sensitive personal information. A123-A124. The injunction does "nothing to prevent DOJ from seeking other records that might actually be relevant." A127.

DOJ next asserts that "indefinite delay" imposed by the preliminary injunction will "concretely and irreversibly harm[]" its investigation. Mot. 22. But the district court found that was not true, and DOJ provides no contrary evidence. Moreover, any delay will not be "indefinite." This appeal will be fully briefed by September 25, 2026, less than three months from the district court's entry of the preliminary injunction. Doc. 2. "DOJ's conduct" has created far more extensive delay, because it "took no action" for "nine months after first serving

Packard with its administrative subpoena." A127. DOJ does not acknowledge that finding, much less rebut it. DOJ cannot delay its pursuit of information for nine months and then contend that it will suffer irreparable harm by waiting a short additional time "before the appeal is likely to be decided." *Al Otro Lado*, 952 F.3d at 1007.

## II. DOJ HAS NOT MADE A STRONG SHOWING OF LIKELIHOOD OF SUCCESS

"An applicant for a stay pending appeal must make 'a strong showing that he is likely to succeed on the merits.'" *Al Otro Lado*, 952 F.3d at 1010 (quoting *Nken*, 556 U.S. at 434). That is a "high standard." *Doe #1*, 957 F.3d at 1062. "Where, as here, the showing of irreparable harm is weak at best, the government must make a commensurately strong showing of a likelihood of success on the merits to prevail under the sliding scale approach." *Al Otro Lado*, 952 F.3d at 1010.

DOJ fails to show any likelihood that the district court abused its discretion, much less a strong likelihood. DOJ focuses its arguments entirely on a single grand jury subpoena, completely ignoring that the subpoena is simply one piece of what "courts around the country have found to be a bad-faith campaign." A119-A120. The Court did not "quash a particular grand jury subpoena," but instead addressed "DOJ's broader campaign to procure provisional class members' private health information." A110-A111. Its authority to do so "reflects a long history of

judicial review of illegal executive action, tracing back to England." *Armstrong*, 575 U.S. at 327. The Southern District of New York, confronted with virtually identical facts, reached similar conclusions. *Coe*, No. 1:26-cv-4641-KPF, ECF 77 at 20. And every district court to consider the issue has held that transgender minors' privacy interests far outweigh whatever unexplained need DOJ claims to have for their sensitive healthcare information. *Id.*; *In re Admin. Subpoena 25-1431-032 to Rhode Island Hosp.*, 2026 WL 1392565, at *8-10; *In re Children's Nat'l Hosp.*, 2026 WL 160792, at *8; *In re Subpoena No. 25-1431-014*, 810 F. Supp. 3d at 588-606.

### A. DOJ's Arguments Contradict Longstanding Practice Permitting Plaintiffs to Enjoin Constitutional Violations

1. The district court correctly concluded that Plaintiffs have an equitable cause of action to prohibit DOJ's campaign to violate their constitutional rights. "[I]njunctive relief has long been recognized as the proper means for preventing entities from acting unconstitutionally." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001); *see Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 491 n.2 (2010) (collecting cases). Plaintiffs' equitable cause of action is not a "mere proxy for a motion to quash," and instead seeks to "avoid playing 'a game of whack-a-mole' in which they must constantly uncover and counter DOJ's ever-shifting tactics." A111 (quoting *Coe*, No. 1:26-cv-4641-KPF, ECF 77 at 7).

Mindful that the " 'power of federal courts of equity to enjoin unlawful

executive action is subject to express and implied statutory limitations,'" the district court considered Federal Rule of Criminal Procedure 17 in detail and asked whether it displayed any "congressional intent to preclude" the equitable relief Plaintiffs seek. A110-A114 (quoting *Armstrong*, 575 U.S. at 327).[3] It concluded that Rule 17 did not because it: (1) "lacks a close relationship to any particular substantive rule of federal law"; and (2) "contains no other indicia of an intent to foreclose constitutional claims for equitable relief." A112-A113. That conclusion is "bolstered" by *N.Y. Times Co. v. Gonzales*, A113, where the Second Circuit held that Rule 17 does not bar an action for a declaratory judgment seeking to protect information the plaintiff believed had been or would soon be sought by a grand jury subpoena in another district, 459 F.3d at 165-67.

DOJ identifies no error in the district court's decision. It urges that Rule 17 establishes a "comprehensive framework governing the issuance, supervision, and challenge of grand jury subpoenas." Mot. 7. Putting aside that Plaintiffs' challenge is not limited to grand jury subpoenas, *see* pp. 12-13, *supra*, Rule 17 is

---

[3] *Armstrong* applied its test to a federal statute, which a plaintiff sought to enforce against a State under the Supremacy Clause. 575 U.S. at 320. The Supreme Court has never applied that test to actions seeking to enforce specifically enumerated constitutional rights against government officers, which lie at the core of the federal courts' equitable powers. *Free Enter. Fund*, 561 U.S. at 491 n.2. Serious constitutional questions would arise if Congress sought to forbid individuals from enforcing their constitutional rights in the districts where they reside.

not "comprehensive." It is not even specific to grand jury subpoenas, and instead "provides a broad mechanism to challenge any federal criminal subpoena" as "unreasonable or oppressive." A112 (quoting Fed. R. Crim. P. 17(c)(2)). Nor is Rule 17 the "sole remedy" for protecting Fifth Amendment rights, even in connection with grand jury subpoenas. *Armstrong*, 575 U.S. at 328. Subpoena recipients need not move to quash a grand jury subpoena under Rule 17(c) to assert their Fifth Amendment rights, and can instead refuse to testify or produce requested documents. *E.g.*, *United States v. Hubbell*, 530 U.S. 27, 36 (2000). If DOJ persists in violating those individuals' Fifth Amendment rights, then courts must dismiss any indictments the grand jury returns. *See id.* at 45-46. Those remedies for threatened and actual Fifth Amendment violations are unrelated to Rule 17, reinforcing the district court's conclusion that "Rule 17 lacks a close relationship to any particular substantive rule of law." A112.

Nor does Rule 6(e) enhance DOJ's argument. DOJ does not even attempt to argue that Rule 6(e) reflects congressional intent to limit equitable remedies. The supposed practical difficulties DOJ invokes do not withstand scrutiny. Mot. 9-10. While DOJ urges that "Rule 6(e) generally prohibits government attorneys from disclosing matters occurring before the grand jury," it admits that it can do so with "authorization from the supervising court." Mot. 9. The district court "invited" DOJ to seek permission to disclose information about its investigation *in camera*.

SA66; *In re Administrative Subpoena 25-1431-032*, 4:26-MC-00006-O, ECF No. 17 at 2 (N.D. Tex. May 12, 2026) (describing grant of such permission). DOJ did not even try. Faced with evidence that "courts around the country have found" it to engage in a "bad-faith campaign," A120, DOJ chose to feign an inability to defend itself rather than seek permission to do so from a court that had previously granted it.

DOJ's suggestion that Plaintiffs' equitable claims will "impede its investigation and frustrate the public's interest in the fair and expeditious administration of the criminal laws," Mot. 11, fails for the same reasons. Neither DOJ nor the public has any interest in investigative actions that violate constitutional rights. *See Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012); A127. The district court found that DOJ was abusing the grand jury process, because the "record before the Court evinces virtually no chance that the information [sought] is relevant to an offense chargeable in the Northern District of Texas." A123. It is no response to argue that DOJ must have the flexibility to act quickly in carrying out the very tactics the district court found likely unconstitutional. That response has even less merit where DOJ's own "conduct suggests that [its] need is not urgent." A127.

DOJ's attempt to invoke "an intolerable risk of inconsistent rulings among federal courts," Mot. 9, fares even worse. As the district court found, DOJ's

"forum shopping" "manufactured" any "risk of conflicting court orders." A115. DOJ could have sought to enforce its administrative subpoena in the Northern District of California, where Packard "carries on business or may be found." 18 U.S.C. § 3486(c). Instead, it "issued its grand jury subpoena to avoid another loss and force Packard and its patients to pursue any challenge to DOJ's demands in a forum that DOJ deems friendlier." A115. DOJ cannot cast the district court's decision as "untenable," Mot. at 8, when DOJ created the very problems of which it complains.

2. Identifying no error in the district court's application of *Armstrong* and Rule 17, DOJ attempts other attacks on Plaintiffs' equitable claim. It urges that the district court's injunction lacks "historical pedigree." Mot. 12-13 (quoting *Trump v. CASA, Inc.*, 606 U.S. 831, 847 (2025)). DOJ waived this argument by failing to raise it in opposition to the preliminary injunction. SA9-SA33; *Allen v. Ornoski*, 435 F.3d 946, 960 (9th Cir. 2006). Regardless, the Supreme Court has recognized a "long history of judicial review of illegal executive action, tracing back to England." *Armstrong*, 575 U.S. at 327; *Free Enter. Fund*, 561 U.S. at 491 n.2; *see* Richard H. Fallon, Jr., *Constitutional Remedies: In One Era and Out the Other*, 136 Harv. L. Rev. 1300, 1311 (2023) ("[T]he Founding generation presupposed a background scheme of common law and equitable remedies through which the Constitution could be enforced and rights vindicated."). That equitable

power does not vanish because the "illegal executive action" challenged is novel. *Armstrong*, 575 U.S. at 327. DOJ is attempting an unprecedented use of out-of-district grand jury subpoenas to unlawfully demand private medical records courts had blocked it from obtaining. Such abuse of investigative power lacks historical pedigree, not courts' intervention to stop it.

Similarly unavailing is DOJ's accusation that Plaintiffs are "packaging an impermissible request for relief from grand jury process together with a request for relief from … other hypothetical future process." Mot. 14. This argument is also waived. SA9-SA33; *Allen*, 435 F.3d at 960. But on the merits, the district court simply enjoined "DOJ from 'obtaining' " specific information. A111. Its injunction does "not invalidate the subpoena," which remains in place and can be enforced as to information outside the injunction's scope. *Id.* That fact distinguishes Justice Barrett's concurrence in *NIH v. Am. Public Health Ass'n*, 145 S. Ct. 2658 (2025). There, a district court had jurisdiction to vacate agency guidance under the APA, but lacked jurisdiction to reinstate grants terminated under that guidance. *Id.* at 2661 (Barrett, J., concurring). Here, in contrast, the district court had jurisdiction to declare and enforce Plaintiffs' rights. It had no need to take the further step of quashing the grand jury subpoena and explicitly did not do so. A111.

Finally, Plaintiffs have standing to challenge DOJ's "campaign to procure"

their PHI. A110. Before the grand jury subpoena issued, DOJ served an administrative subpoena seeking the same information about the provisional class. A92-A93. That history shows a "credible threat" to Plaintiffs' Fifth Amendment privacy rights for over a year. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 161 (2014). That threat results from DOJ's actions regarding Plaintiffs, not a "speculative chain of possibilities." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 (2013). Even if DOJ engages in "ever-shifting tactics," A111, the threat remains unchanged.

### B. DOJ Is Violating Plaintiffs' Fifth Amendment Rights

DOJ's arguments regarding Plaintiffs' Fifth Amendment privacy claim are even weaker. This Court has "recognized a right to informational privacy" under the Fifth Amendment "stemming from an individual's interest in avoiding disclosure of personal matters." *Doe v. Bonta*, 101 F.4th 633, 637 (9th Cir. 2024); *Tucson Woman's Clinic v. Eden*, 379 F.3d 531, 553 (9th Cir. 2004), *abrogated on other grounds by Dobbs v. Jackson Women's Health Organization*, 597 U.S. 215 (2022). The district court carefully applied this Court's balancing test from *Tucson Woman's Clinic* and concluded that Plaintiffs' interest in the "most sensitive information that could be collected about a person" far outweighed any legitimate interest DOJ might have. A117-A125. Every other district court to consider the issue has reached the same conclusion. *Coe*, No. 1:26-cv-4641-KPF, ECF 77 at

20; *In re Admin. Subpoena 25-1431-032 to Rhode Island Hosp.*, 2026 WL 1392565, at *8-10; *In re Children's Nat'l Hosp.*, 2026 WL 160792, at *8; *In re Subpoena No. 25-1431-014*, 810 F. Supp. 3d at 588-606.

DOJ does not dispute that *Tucson Woman's Clinic* recognized a Fifth Amendment "interest in avoiding certain unauthorized disclosures of highly personal information." Mot. 18. But it urges that Plaintiffs cannot invoke that right in response to a grand jury subpoena. *Id.* That makes no sense. The Fifth Amendment constrains all government action, including the "grand jury's subpoena power." *United States v. Calandra*, 414 U.S. 338, 346 (1974); *see Branzburg v. Hayes*, 408 U.S. 665, 708 (1972) ("[G]rand juries must operate within the limits of the First Amendment as well as the Fifth."). The district court specifically addressed DOJ's argument and explained that Plaintiffs do not assert a "'general right of privacy,'" but instead a "narrow due-process right to the privacy of information" that applies equally to grand juries. A118-A119 (quoting *In re Grand Jury Proceedings*, 801 F.2d 1164, 1169 (9th Cir. 1986)). DOJ does not acknowledge the district court's reasoning, much less identify any error.

Nor does grand jury secrecy protect the provisional class's Fifth Amendment privacy rights. As the district court explained, it is "of little solace to transgender minors that the only officials with access to their medical records are those working to terminate gender-affirming care based on clear hostility to

'transgenderism.'" A120. Rule 6(e) would also permit disclosure of transgender minors' PHI to state officials who have suggested investigating parents for child abuse. A121. Such disclosures to hostile government employees violate Fifth Amendment privacy rights. *Tucson Women's Clinic*, 379 F.3d at 551-52.

DOJ contends that, following the Supreme Court's decision in *Dobbs*, the Court should not extend *Tucson Woman's Clinic* to "new applications" such as to "limit compliance with a grand jury subpoena." Mot. 18. That argument is waived. DOJ's opposition to the preliminary injunction did not advance it, or even cite *Dobbs*. SA9-SA33; *Allen*, 435 F.3d at 960. Regardless, this Court has continued to "recognize[ ] a right to informational privacy" following *Dobbs*. *Doe*, 101 F.4th at 637. DOJ cannot show a strong likelihood of success on appeal by urging the Court to disregard its precedent. *See United States v. Wells*, 29 F.4th 580, 587 n.3 (9th Cir. 2022) (quoting *Oregon Nat. Desert Ass'n v. U.S. Forest Serv.*, 550 F.3d 778, 782 (9th Cir. 2008)) ("'[W]e … are bound by earlier published decisions of our court.'"). *Dobbs* itself distinguished between "two very different meanings" of privacy: "the right to shield information from disclosure" and "the right to make and implement important personal decisions without governmental interference." 597 U.S. at 273 (citing *Whalen v. Roe*, 429 U.S. 589, 599-600 (1977)). *Dobbs* focused on the latter autonomy-based interest; it did not address, much less overrule, the informational-privacy doctrine. *Id.*

Finally, DOJ contends that the district court erred in finding "conscience-shocking misconduct." Mot. 19. But the record amply supports that finding. DOJ has engaged in "what courts around the country have found to be a bad-faith campaign to intimidate hospitals into halting the lawful provision of gender-affirming care." A120. The "requests challenged here" are part of that campaign and "concern child-patients' identities and highly sensitive medical information." A123 (quotation marks omitted). Multiple courts have "ably explained" that such information has "no discernable relevance" to suspected FDCA violations. *Id.*; *see In re Subpoena No. 25-1431-014*, 810 F. Supp. 3d at 579 (FDCA "regulates the introduction, labeling, and distribution of drugs in interstate commerce; it does not govern how physicians diagnose patients, obtain consent, document treatment, or communicate with them."); Mot. 3. Even if "sensitive patient information" could be relevant to an FDCA violation *in California*, there is "virtually no chance" that the records of *every* transgender minor who received care at Packard are "relevant to an offense chargeable in" Texas. A123; *Coe*, No. 1:26-cv-4641-KPF, ECF 77 at 22 ("I cannot conceive of a crime that would require the breadth of disclosure sought.").

DOJ insists that it often seeks "large quantities" of "billing records" and may investigate "out-of-district conduct" to determine whether a crime occurred within a certain jurisdiction. Mot. 20-21. But that is no response. Court after court has

found DOJ has no legitimate need for the sensitive information it seeks. Rather than prove its case in the district where Plaintiffs received care, DOJ sought to "avoid another loss" by attempting to move any dispute to a "forum that DOJ deems friendlier." A115. It responded to repeated findings of misconduct with forum shopping rather than a defense. Such egregious efforts to violate the Fifth Amendment rights of a vulnerable group minor patients, "based on clear hostility to 'transgenderism,'" shock the conscience. A120; *see Coe*, No. 1:26-cv-4641-KPF, ECF 77 at 22-23.

## III. THE BALANCE OF EQUITIES AND PUBLIC INTEREST DISFAVOR A STAY

The final two factors of the stay analysis, if reached, weigh heavily against entry of a stay. First, a "stay will substantially injure" Plaintiffs. *Nken*, 556 U.S. at 434. The district court found that allowing DOJ to obtain the provisional class's PHI would result in constitutional violations, "loss of privacy, chilling of doctor-patient communications, and risk of governmental harassment," all of which "cannot be undone." A126. A stay pending appeal would permit DOJ to obtain Plaintiffs' information and thus inflict the "very irreparable harm that the preliminary injunction was designed to prevent," resulting in a "complete subversion" of the district court's decision. *Coe*, No. 1:26-cv-4641-KPF, ECF 83 at 1-2.

DOJ's suggestion that it can cure any injury by returning records, Mot. 23, is

wrong. *Church of Scientology of Cal. v. United States* addressed whether a third party's compliance with a subpoena rendered a dispute moot; it did not hold that disclosure of constitutionally protected information to the government causes no irreparable injury. 506 U.S. 9, 13-15 (1992). In fact, the Supreme Court held the exact opposite. It explained that, following disclosure, "it is now too late to prevent, or to provide a fully satisfactory remedy for, the invasion of privacy that occurred." *Id.* at 13. Packard's production of Plaintiffs' information would "'out' provisional class members as transgender to a federal government that for more than a year has 'sought to identify, to demonize, and ultimately to eradicate an entire population of transgender people." A126. Subsequent return of that production does nothing to remedy the harm.

The public interest also disfavors a stay. "[I]t is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres*, 695 F.3d at 1002. Because a stay would threaten such violations, the public interest favors denying DOJ's motion.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny DOJ's motion for a stay pending appeal.

Respectfully submitted,

DATED: August 10, 2026

ROSEN BIEN GALVAN & GRUNFELD LLP

By: */s/ Kara Janssen*
Kara Janssen

*Attorneys for Plaintiffs-Appellees*

## STATEMENT OF RELATED CASES

Appellees are not aware of any related cases pending before the Court.

DATED: August 10, 2026

Respectfully submitted,

ROSEN BIEN GALVAN & GRUNFELD LLP

By: */s/ Kara Janssen*
Kara Janssen

*Attorneys for Plaintiffs-Appellees*

**CERTIFICATE OF COMPLIANCE PURSUANT TO FED. R. APP. 32(a)(7)(C) AND CIRCUIT RULE 32-1**

Pursuant to Fed. R. App. P. 32 (a)(7)(C) and Ninth Circuit Rule 32-1, I certify that the attached brief is proportionally spaced, has a typeface of 14 points and contains 5,607 words.

DATED: August 10, 2026

ROSEN BIEN GALVAN & GRUNFELD LLP

By: */s/ Kara Janssen*
Kara Janssen

*Attorneys for Plaintiffs-Appellees*