**No. 26-4388**

**IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT**

Z.A., *a minor, by and through their parent*, A.A., *et al.*,
*Plaintiffs-Appellees*,

v.

TODD BLANCHE, *Attorney General, in his official capacity*; UNITED STATES DEPARTMENT OF JUSTICE,
*Defendants-Appellants.*

On Appeal from the United States District Court for the Northern District of California

# DEFENDANT-APPELLANTS' REPLY IN SUPPORT OF MOTION FOR STAY PENDING APPEAL


BRETT A. SHUMATE
*Assistant Attorney General*

JORDAN C. CAMPBELL
*Deputy Assistant Attorney General*

BRAD HINSHELWOOD
SARAH WELCH
JOHN BAILEY
BRANTLEY MAYERS
*Attorneys*
*Civil Division*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-6993*

## TABLE OF CONTENTS

INTRODUCTION ........ 1

ARGUMENT ........ 2

I. The Injunction Is Indefensible. ........ 3

A. Plaintiffs are using the wrong procedural vehicle in the wrong court. ........ 3

B. The district court ignored circuit precedent and grossly misapplied substantive due process principles. ........ 7

II. The Remaining Considerations Favor The Government. ........ 10

CONCLUSION ........ 12

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

## Cases

*Allen v. Santa Clara Cnty. Corr. Peace Officers Ass'n*,
38 F.4th 68 (9th Cir. 2022) .......... 9

*Armstrong v. Exceptional Child Center, Inc.*,
575 U.S. 320 (2015) .......... 4, 5, 6

*Blair v. United States*,
250 U.S. 273 (1919) .......... 7

*Cisco Sys., Inc. v. Doe I*,
146 S. Ct. 1882 (2026) .......... 4

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) .......... 3

*Cnty. of Sacramento v. Lewis*,
523 U.S.  (1998) .......... 9

*Dobbs v. Jackson Women's Health Org.*,
597 U.S. 215 (2022) .......... 9

*Elgin v. Dep't of Treasury*,
567 U.S. 1 (2012) .......... 4, 6

*In re Grand Jury Proceedings*,
801 F.2d 1164 (9th Cir. 1986) .......... 2, 7, 8, 11

*In re Subpoena Duces Tecum*,
228 F.3d 341 (4th Cir. 2000) .......... 11

*QueerDoc, PLLC v. U.S. Dep't of Just.*,
No. 25-7384 (9th Cir. Aug. 14, 2026) .......... 1, 10

*United States v. Calandra*,
414 U.S. 338 (1974) .......... 8, 9, 10, 12

*United States v. R. Enters., Inc.*,
498 U.S. 292 (1991) .......... 12

*Webster v. Doe*,
486 U.S. 592 (1988) .................... 6

*Ziglar v. Abbasi*,
582 U.S. 120 (2017) .................... 4

**Rules**

Fed. R. Crim. P. 6 .................... 3

Fed. R. Crim. P. 6(e)(3)(E) .................... 5

Fed. R. Crim. P. 6(e)(3)(F) .................... 5

Fed. R. Crim. P. 17 .................... 3

## INTRODUCTION

The Department of Justice is conducting a nationwide investigation into, among other things, misbranding and billing fraud in the provision of gender-related medical interventions to minors. Just three days ago, this Court held in a precedential opinion that a subpoena issued to investigate Food, Drug, and Cosmetic Act offenses in this space was proper and represented an ordinary exercise of the Executive's constitutional authority to set enforcement priorities. *QueerDoc, PLLC v. U.S. Dep't of Just.*, No. 25-7384 (9th Cir. Aug. 14, 2026). The district court's order below suffers from many of the same errors that this Court recently called out—*e.g.*, casually assuming impropriety in the normal workings of the Department of Justice, substituting judicial notions of what should be investigated for the Executive's, and pre-judging enforcement actions that have not yet been brought.

In light of this Court's recent ruling—in addition to all of the other reasons articulated below—the district court's injunction is plainly untenable. The district court barred the government from seeking or obtaining medical and billing records pertaining to certain procedures through any means (including grand jury process), on the theory that the records could not possibly be relevant to any federal offense. Such an order is unknown to American legal history: Plaintiffs cite no remotely comparable order—with the exception of another order issued within a few days of the decision below.

At the outset, any motions to quash grand jury process are properly entertained only by the court that issued the process. Plaintiffs do not improve on the district court's reasoning, which would contravene the express terms of Criminal Rule 17 and invite each district court to supervise and interfere with grand jury proceedings operating under the auspices of its sister courts. That is not how the federal judiciary was designed to work. Instead, district courts supervise their own grand juries, and courts of appeals supervise district courts within their jurisdiction.

The district court's order is equally novel on the merits. Plaintiffs do nothing to rehabilitate the district court's recognition of a new substantive due process right to privacy in medical information sought through grand jury process—a purported right that lacks any basis in history or tradition and is flatly inconsistent with this Court's rejection of that theory in materially identical circumstances. *See In re Grand Jury Proceedings*, 801 F.2d 1164, 1167 (9th Cir. 1986).

The district court's unwarranted intrusion into the Executive Branch's authority to execute the laws, including through criminal investigation and law enforcement, works irreparable harm each day it remains in effect. The Court should promptly grant a stay pending appeal.

## ARGUMENT

The government is entitled to a stay pending appeal. It is likely to succeed on the merits, and the non-merits factors tip in its favor.

## I. The Injunction Is Indefensible.

The government will prevail on appeal because the unprecedented injunction exceeds the district court's equitable authority and is erroneous on its own terms.

### A. Plaintiffs are using the wrong procedural vehicle in the wrong court.

As the government has explained, Mot. 7-15, the Federal Rules of Criminal Procedure establish a comprehensive framework governing the issuance, supervision, and challenge of grand jury subpoenas. *See* Fed. R. Crim. P. 17; *see also id.* R. 6. District courts do not possess freewheeling equitable authority to entertain collateral attacks on, or to enjoin (or partially enjoin), a sister court's grand jury process. Plaintiffs sought and obtained an order that functions just like quashal or modification of a sister federal court's grand jury process, and the government is likely to show that the district court exceeded its authority. Indeed, when Plaintiffs finally moved for an ex parte TRO against the Department on June 8, Plaintiffs squarely argued that "immediate relief is necessary" because the asserted subpoena "demands compliance by June 10," A60—undermining their argument (at 12-13, 18-19) that the real need is for relief from unknown other subpoenas as part of unknown other investigations. *But see Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410-14 (2013). And pseudonymous assertions of irreparable harm from unknown process cannot suffice for standing, much less salvage the injunction here insofar as it purports to reach grand jury process emanating from another district court.

Parroting the district court, Plaintiffs contend that *Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320 (2015), nonetheless permits evasion of Rule 17 because it "lacks a close relationship to any particular substantive rule of federal law." Opp. 14 (quoting A112-A113). But that observation does not change the *Armstrong* calculus. The point is that Rule 17 "express[ly] provi[des]" a mechanism for obtaining relief from extant grand jury process. *Armstrong*, 575 U.S. at 328. Indeed, the Supreme Court's more recent "cases have stressed that if Congress has created 'an alternative remedial structure,' then '*that alone*' precludes the creation of a cause of action." *Cisco Sys., Inc. v. Doe I*, 146 S. Ct. 1882, 1891 (2026) (emphasis in original) (quoting *Ziglar v. Abbasi*, 582 U.S. 120, 137 (2017)). That reasoning applies with particular force here, where—unlike *Armstrong*—the prescribed procedure affords Plaintiffs themselves a chance to seek full relief from a federal court. As the district court acknowledged, Rule 17 is a "broad mechanism" that would permit Plaintiffs to object "based on, among other reasons, . . . statutory or common-law privileges, or the Constitution." A112. Plaintiffs and the district court thus have it backwards. That Rule 17 is a "comprehensive" mechanism, *Elgin v. Dep't of Treasury*, 567 U.S. 1, 10 (2012), for resolving objections to grand jury subpoenas supports that Congress could not possibly have intended for it to be evaded through unnecessary and highly disruptive collateral equitable actions.

In any event, even if Rule 17's remedial scheme were not alone sufficient to foreclose a duplicative equitable cause of action, it does so when combined the

defining features of grand jury investigations (including secrecy, centralized supervision, and nationwide service of process) that make collateral adjudication "judicially unadministrable." *Armstrong*, 575 U.S. at 328. Plaintiffs nonetheless claim that allowing collateral attacks on grand jury process would not lead to any "practical difficulties," contending that the Department "chose to feign an inability to defend itself rather than" obtain authorization from the issuing court under Rule 6(e). Opp. 15-16. This argument is difficult to understand. The district court entered an ex parte injunction within hours of Plaintiffs' strategically timed motion. The intolerable and unjustified disruption to the asserted grand jury proceedings caused by Plaintiffs' collateral attack was baked in before the government even had a chance to appear.

It continued into the preliminary injunction stage. Even the district court acknowledged that grand jury secrecy "restricted DOJ's ability to explain the relevance of the requested patient records for purposes of opposing preliminary injunctive relief." A122. The district court's post-injunction "invit[ation]" for the government to try again misses the point in multiple respects. Opp. 15. To start, the court's enjoin-first-and-figure-it-out-later approach treated grand jury secrecy protections as license to indefinitely obstruct an alleged grand jury investigation. Further, and independently, it is up to a grand jury's supervising court—not the Department—to determine whether to authorize the disclosure of any information about a grand jury's proceedings, to what extent such disclosure may occur, and whether any conditions should be attached to that disclosure. *See* Fed. R. Crim. P. 6(e)(3)(E), (F). And even if

such authorization were granted on terms that would permit the Department to collaterally litigate the validity of the subpoena, in the meantime, there would be extended interruption of the grand jury's investigation—with no informed determination about the consequences or appropriateness of such delay. This case vividly illustrates why Congress could not possibly have intended to allow litigants to "circumvent" Rule 17 simply "by invoking [a court's] equitable powers." *Armstrong*, 575 U.S. at 328.

Gesturing at the principle of *Webster v. Doe*, 486 U.S. 592 (1988), Plaintiffs say that "[s]erious constitutional questions would arise" if Rule 17 "forbid[s] individuals from enforcing their constitutional rights in the districts where they reside." Opp. 14 n.3. Not so. *Webster* stated that "where Congress intends to preclude judicial review of constitutional claims[,] its intent to do so must be clear." 486 U.S. at 603. But as the Supreme Court explained in *Elgin*, "*Webster*'s standard does not apply where Congress simply channels judicial review of constitutional claims to a particular" forum. 567 U.S. at 9. It was therefore of no constitutional concern that the remedial scheme there required covered employees nationwide to seek judicial review in the Federal Circuit—"even [for] constitutional claims for equitable relief." *Id.* at 8. The same is true here: nothing about *Webster* guarantees Plaintiffs a particular venue for their challenges, and everything about the grand jury process appropriately channels such disputes to the supervising court.

*Last*, Plaintiffs assert (again with no support) that "[t]he district court found that DOJ was abusing the grand jury process." Opp. 16. That is simply false. The district court made no such finding because as a nonsupervising court, it lacked any information about the asserted grand jury investigation, and because Plaintiffs conceded that "the nature of any alleged criminal conduct under investigation is unknown." A10, A63.

Nor could the district court in the Northern District of California properly draw any conclusions about purported "abus[e]" of an asserted grand jury in the Northern District of Texas; as discussed, the district court here simply lacked the most basic information about the existence of such a grand jury or the contours of any investigation to make such a determination. Plaintiffs' accusations of "forum shopping" are unpersuasive for similar reasons. Opp. 17 (quoting A115). Moreover, a grand jury may investigate out-of-district conduct and obtain out-of-district evidence to determine "whether the facts show a case within their jurisdiction," *Blair v. United States*, 250 U.S. 273, 283 (1919)—which is precisely why Rule 17 authorizes nationwide service of process.

**B. The district court ignored circuit precedent and grossly misapplied substantive due process principles.**

Plaintiffs all but ignore the decision that forecloses their claim on the merits. Opp. 20. *In re Grand Jury Proceedings,* 801 F.2d 1164, 1167 (9th Cir. 1986), considered a grand jury subpoena for patient and prescription records in an investigation of a

physician's distribution of anabolic steroids, androgenic hormones, and similar drugs. The physician, who was believed to treat "many professional athletes," resisted production on the ground that disclosure would violate his patients' "constitutional right to privacy in the records sought by the subpoena." *Id.* at 1166-67. This Court rejected that argument: "There is no general right to privacy before the grand jury," and "a person possesses no reasonable expectation that his medical history will remain completely confidential." *Id.* at 1169. That is this case.

Plaintiffs never explain how the district court's injunction can be reconciled with that holding. Instead, they insist that *In re Grand Jury Proceedings* rejected only a "general right of privacy" in medical records, whereas they supposedly invoke a narrower "due-process right to the privacy of information." Opp. 20. But that distinction is illusory: in both cases the claim was that patient records should be shielded from disclosure in response to a grand jury subpoena by a right to privacy rooted in the Fifth Amendment. Relabeling the asserted right does not alter the fact that this Court has rejected it.

The Supreme Court has similarly long held—in language plaintiffs do not address—that a grand jury witness "of course" has "no right of privacy before the grand jury." *United States v. Calandra*, 414 U.S. 338, 353 (1974). Plaintiffs still cite no case that has recognized a substantive due process right to informational privacy in the grand jury context. *See* Opp. 19-23. And any such right in the grand jury context would have to have emerged long ago. The scenario is nothing new: Grand juries

have long conducted inquiries that involve "embarrassing" topics and require "an unwelcome disclosure of . . . personal affairs." *Calandra*, 414 U.S. at 353. And substantive due process requires a long history and tradition protecting the asserted, specifically defined right. *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 250, 256 (2022).[1] But Plaintiffs cite no such history or tradition of any right to privacy in the face of a grand jury subpoena.

Plaintiffs' other contentions also fail to effectively substitute for the "exact analysis" required to demonstrate that particular conduct "shocks the conscience." *Cnty. of Sacramento v. Lewis*, 523 U.S. 834 (1998). Plaintiffs do not—and cannot—dispute that patient records are commonly relevant to numerous criminal prosecutions, *see* Mot. 20-21, instead simply asserting that they cannot be relevant to any investigation a grand jury might be conducting here. But that fares no better than the district court's uninformed speculation: Plaintiffs have expressly alleged and argued that "the nature of any alleged criminal conduct under investigation is unknown," A10, A63, so Plaintiffs can hardly establish that the Department has "no legitimate need" for such evidence, much less perform the sort of "exact analysis" Supreme Court precedent requires.

---

[1] Plaintiffs repeatedly assert that the Department has waived certain "argument[s]." Opp. 17, 18, 21. That is not how waiver works. As this Court and as "the Supreme Court ha[ve] made clear, it is claims that are deemed waived or forfeited, not arguments," and so the Department is "not limited to the precise arguments [it] made below." *Allen v. Santa Clara Cnty. Corr. Peace Officers Ass'n*, 38 F.4th 68, 71 (9th Cir. 2022) (citation omitted).

Plaintiffs' reliance on district court cases quashing administrative subpoenas issued under HIPAA seeking patient records, Opp. 22-23, is even further afield. A panel of this Court recently reversed one such quashal order, explaining "patient records[] may produce evidence about the scale of any misconduct and about whether [the subpoenaed entity] or another party concealed the risks or failed to warn about the potential adverse effects of 'gender-affirming care.'" *QueerDoc*, slip. op. at 30. And even aside from those erroneous quashal orders, Plaintiffs here must defend a far broader remedy that inescapably rests on the demonstrably false premise that patient medical and billing records could not be relevant to ascertaining or prosecuting any violations of federal law.

## II. The Remaining Considerations Favor The Government.

The government will be irreparably harmed absent a stay. The district court took the extraordinary step of immunizing LPCH from any process, including grand jury process. That would install the district court as the superintendent over an asserted grand jury investigation in an entirely different district, and would intolerably delay any such investigation.

Because Plaintiffs cannot contest that "protracted interruption of grand jury proceedings" could be "fatal to the enforcement of the criminal law," *Calandra*, 414 U.S. at 350, they retreat to arguing that "any delay will not be 'indefinite,'" and attempt to blame the Department for the procedural morass created by Plaintiffs' improper suit. Opp. 11. This view is unsustainable. Unlike Plaintiffs—who waited

nearly two weeks to file an amended complaint seeking relief against the government, and only after their attempt to enjoin LCPH from complying with the subpoena was denied—the government has moved with alacrity in this litigation ever since Plaintiffs sandbagged the government "just hours before the original return date on the [asserted] grand jury subpoena." A95. Briefing on the temporary restraining order was completed in nine days, then converted to a preliminary injunction in order to further expedite proceedings, and the government filed its stay motion in this Court within mere hours of the denial of a stay by the district court—which denied the government's request for expedited stay briefing and took more than two weeks to act on the stay motion.

Plaintiffs' protest (at 11-12) that the government did not immediately move to enforce a since-withdrawn administrative subpoena is irrelevant. It is one thing to engage in an ordinary (and often time-consuming) process of negotiation over an early investigative step like an administrative subpoena; it is entirely different to be indefinitely enjoined from using any ordinary investigative process to further an investigation.

Plaintiffs' asserted privacy interests do not outweigh the government's strong and legitimate interests in enforcing federal law—interests that "outweigh[] the privacy rights of those whose [medical] records" are sought to further those interests. *In re Subpoena Duces Tecum*, 228 F.3d 341, 351 (4th Cir. 2000); *In re Grand Jury Proceedings*, 801 F.2d at 1169. A grand jury is entitled to conduct its investigation and

receive even evidence that amounts to "an unwelcome disclosure of … personal affairs." *Calandra*, 414 U.S. at 353. "[P]rocedural delays and detours" that interfere with that process are impermissible. *United States v. R. Enters., Inc.*, 498 U.S. 292, 298 (1991). And lacking a workable merits theory, no irreparable harm to Plaintiffs can suffice to sustain the district court's preliminary injunction. That novel, far-reaching order should be promptly stayed.

## CONCLUSION

The Court should stay the district court's order pending appeal.

Respectfully submitted,

BRETT A. SHUMATE
*Assistant Attorney General*
JORDAN C. CAMPBELL
*Deputy Assistant Attorney General*
BRAD HINSHELWOOD
SARAH WELCH

*/S/ JOHN BAILEY*
JOHN BAILEY
*Attorneys*
*Civil Division*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
(202) 514-6993
*john.bailey@usdoj.gov*

August 2026

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(A) and Local Rules 27-1(1)(d) and 32-3 because it contains 2796 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Garamond 14-point font, a proportionally spaced typeface.

*/s/ JOHN BAILEY*
JOHN BAILEY