No. 26-4388

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

Z.A., *et al.*,
*Plaintiffs – Appellees*,

v.

TODD BLANCHE, United States Attorney General, in his official capacity, *et al.*,
*Defendants - Appellants.*

**On Appeal from the United States District Court**
**for the Northern District of California**
No. 5:26-cv-4998
Hon. P. Casey Pitts

**BRIEF OF AMICI CURIAE STATES IN SUPPORT OF APPELLEES**

ROB BONTA
*Attorney General of California*
NELI N. PALMA, SBN 203374
*Senior Assistant Attorney General*

NIMROD PITSKER ELIAS, SBN 251634
*Supervising Deputy Attorney General*
CRYSTAL ADAMS, SBN 308638
*Deputy Attorney General*
1515 Clay Street, 20th Floor
Oakland, CA 94612
Telephone: (510) 879-3428
Crystal.Adams@doj.ca.gov
*Attorneys for Amici Curiae States*

August 17, 2026

# TABLE OF CONTENTS

**Page**

Interests of Amici States ........................................................................ 1
Argument.................................................................................................... 3
The Department of Justice Seeks to Interfere with Amici States' Authority to Regulate the Practice of Medicine ................................. 3
A. States Have a Long History of Exercising Their Sovereign Powers to Regulate the Practice of Medicine........................................................................ 3
B. California and Many Other Amici States Have Exercised Their Police Powers to Protect Access to Transgender Healthcare .................................................. 5
Conclusion ................................................................................................ 11

# TABLE OF AUTHORITIES

**Page**

## CASES

*Barsky v. Board of Regents*
347 U.S. 442 (1954) .................................................................... 4

*Buckman v. Plaintiffs' Legal Comm.*
531 U.S. 341 (2001) .................................................................... 4

*Dent v. West Virginia*
129 U.S. 114 (1889) .................................................................... 3

*Gonzales v. Carhart*
550 U.S. 124 (2007) .................................................................... 4

*Gonzales v. Oregon*
546 U.S. 243 (2006) .................................................................... 4

*Hillsborough Cnty., Fla. v. Automated Med. Lab'ys, Inc.*
471 U.S. 707 (1985) .................................................................... 3, 4

*In re Boston Children's Hospital Subpoena*
2025 WL 2607784 (D. Mass. Sep. 9, 2025) .................................... 10

*Massachusetts v. Trump*
2026 WL 1584837 (D. Mass. June 3, 2026) .................................... 11

*Medtronic, Inc. v. Lohr*
518 U.S. 470 (1996) .................................................................... 3

*Metro. Life Ins. Co. v. Massachusetts*
471 U.S. 724 (1985) .................................................................... 3

*Watson v. Maryland*
218 U.S. 173 (1910) .................................................................... 4

## TABLE OF AUTHORITIES
## (continued)

**Page**

**STATUTES**

Cal. Bus. & Prof. Code
§ 850.1 .......... 8
§ 852 .......... 8

Cal. Civ. Code
§ 51(b) .......... 6
§ 51(e)(6) .......... 6
§ 56.109 .......... 6
§ 1798.301 .......... 9

Cal. Code of Regs, Title 10, § 2561.2(a) .......... 8

Cal. Gov't Code
§ 12940(a) .......... 6
§ 12955 .......... 6

Cal. Ins. Code § 10133.13 .......... 9

Cal. Welf. & Inst. Code § 14197.09 .......... 7

Colo. Regs. §702-4 .......... 8

Colo. Rev. Stat.
§ 10-4-109.6(1) .......... 9
§ 10-16-121(1)(f) .......... 6
§ 12-30-121 .......... 8
§ 13-21-133 .......... 6
§ 16-3-102 .......... 6
§ 16-3-301 .......... 6

## TABLE OF AUTHORITIES
## (continued)

**Page**

Conn. Gen. Stat.
§ 10-15c .......... 6
§ 19a-17e .......... 6, 8
§ 20-579a .......... 8
§ 46a-58 *et seq.* .......... 6
§ 52-146w .......... 6
§ 52-571m .......... 6, 8

Del. Code
Title 6, Chapter 45 & 46 .......... 6
Title 18, § 2304 .......... 8
Title 19, Chapter 7 .......... 6

D.C. Code § 2-1401.01 *et seq.* .......... 6

Ill. Admin. Code
Title 50, § 2603.35 .......... 8
Title 89, § 140.413(a)(16) .......... 7
Title 89, § 140.440(h) .......... 7

Ill. Comp. Stat.
40/28-5 *et seq.* .......... 6
5/1-102(A), 5/1-103(O-1), 5/1-103(Q) .......... 6
5/356z.60(b) .......... 8
60/22(C) .......... 8
60/23(A)(3) .......... 9

Me. Rev. Stat.
Title 5, § 4551 *et seq.* .......... 6
Title 14, § 9001 *et seq.* .......... 6
Title 22, § 1508 .......... 6
Title 22, § 3174-MMM .......... 8

## TABLE OF AUTHORITIES
## (continued)

**Page**

Md. Code Ann.
Educ. § 26-704 .......... 6
Health Occ. § 1-227 .......... 8
Health-Gen. § 15-151 .......... 7
Ins. § 15-1A-22 .......... 8
State Gov't § 20-606 .......... 6
State Gov't § 20-705 .......... 6
State Pers. & Pens. § 2-312 .......... 6

Mass. General Laws
Chapter 12, § 11I½(b)-(d) .......... 6
Chapter 112, § 5F½ .......... 8
Chapter 112, § 77 .......... 8
Chapter 112, § 128 .......... 8
Chapter 147, § 63 .......... 7
Chapter 151B, § 4 .......... 6
Chapter 272, § 92A .......... 6, 8
Chapter 272, § 98 .......... 6, 8
Chapter 276, § 13 .......... 7

Mich. Comp. Laws § 37.2202(1)(a) .......... 6

Ch. 29, 2023 Minn. Laws 286 .......... 7

Minn. Stat.
§ 62Q.585 .......... 8
§ 256B.0625, subd. 3a .......... 7
§ 260.925 .......... 7
§ 363A.01 *et seq.* .......... 6
§ 363A.03, subd. 50 .......... 6

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

Nev. Rev. Stat.
§ 118.100 .... 6
§ 284.150(3) .... 6
§ 439.994 .... 6
§ 449.101(1) .... 6
§ 613.330 .... 6

N.J. Stat. Ann.
§ 10:5-1 *et seq.* .... 6
§ 17:48-6oo .... 6
§ 17:48-6oo .... 8
§ 18A:36-41 .... 6

N.Y. C.P.L.R.
§ 3102 .... 7
§ 3119 .... 7
§ 4550 .... 7

N.Y. Civ. Rights Law
§ 40-c .... 6
§ 70-b .... 7

N.Y. Comp. Codes R. & Regs.
Title 10, § 405.7(c)(2) .... 7
Title 11, § 52.75 .... 8
Title 18, § 505.2(l) .... 7
Title 9, § 466.13 .... 6

N.Y. Educ. Law § 6531-b .... 8

N.Y. Exec. Law
§ 296-a .... 6
§ 296-b .... 6
§ 837-x .... 7

N.Y. Ins. Law § 3436-a .... 9

## TABLE OF AUTHORITIES
## (continued)

Page

Or. Admin. R. 836-053-0441 .......... 8

Or. Rev. Stat.
§ 15.430 .......... 7
§ 24.500 .......... 7
§ 414.769 .......... 7
§ 435.210 .......... 7
§ 435.240 .......... 7
§ 659A.006 .......... 6
§ 659A.030 .......... 6
§ 659A.403 .......... 6
§ 659A.421 .......... 6
§ 675.070 .......... 8
§ 675.540 .......... 8
§ 675.745 .......... 8
§ 676.313 .......... 9
§ 677.190 .......... 8
§ 678.138 .......... 8
§ 685.110 .......... 8
§ 689.405 .......... 8

R.I. Gen. Laws
§ 5-37.8-1 .......... 8
§ 11-24-2 .......... 6
§ 28-5-5 .......... 6
§ 28-5.1-12 .......... 6
§ 28-6-18 .......... 6
§ 34-37-2 .......... 6
§ 34-37-4 .......... 6
§ 34-37-4.3 .......... 6
§ 34-37-5.2 .......... 6
§ 34-37-5.3 .......... 6
§ 34-37-5.4 .......... 6

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

Vt. Stat. Ann.
Title 8, § 4071 .......... 7
Title 9, § 4502 .......... 6
Title 9, § 4503 .......... 6
Title 12, § 7301 *et seq* .......... 7
Title 21, § 495 .......... 6

Wash. Rev. Code
§ 7.115 *et seq.* .......... 7
§ 49.60.030(1) .......... 6
§ 49.60.040(2) .......... 6
§ 49.60.040(29) .......... 6
§ 49.60.215 .......... 6

**CONSTITUTIONAL PROVISIONS**

N.Y. Const. art. 1 § 11 .......... 6

U.S. Const. amend. X .......... 3

**OTHER AUTHORITIES**

Federation of State Medical Boards, *Contact a State Medical Board*, https://www.fsmb.org/contact-a-state-medical-board (last visited June 11, 2026) .......... 5

Health & Human Servs., *Med. Servs. Admin. Bull. No. 19-06: Compliance with Federal Nondiscrimination Provisions* (Mar. 1, 2019), https://perma.cc/38YL-FWUQ; .......... 7

Health & Human Servs., *Med. Servs. Admin. Bull. No. 21-28: Coverage of Gender Affirmation Services* (Sept. 30, 2021), https://perma.cc/96GE-9GFZ; .......... 7

**TABLE OF AUTHORITIES**
**(continued)**

**Page**


Mass. Div. Ins., *Bull. No. 2014-03: Guidance Regarding Prohibited Discrimination on the Basis of Gender Identity or Gender Dysphoria Including Medically Necessary Transgender Surgery and Related Health Care Services* (June 20, 2014), https://www.mass.gov/lists/doi-bulletins ....................................8

Mass. Div. Ins., *Bull. No. 2021-11: Prohibited Discrimination on the Basis of Gender Identity or Gender Dysphoria Including Medically Necessary Gender Affirming Care and Related Services* (Sept. 9, 2021), https://www.mass.gov/lists/doi-bulletins;.....................................................................................8

MassHealth, *Gender-Affirming Care Covered by MassHealth*, https://perma.cc/YC87-7ZPH (last visited June 11, 2026)...........................7

Nev. Medicaid Servs. Manual § 608...................................................................7

Patricia J. Zettler, *Toward Coherent Federal Oversight of Medicine*, 52 San Diego L. Rev. 427, 448 (2015) ........................................4

R.I. Gender Dysphoria/Gender Nonconformity Coverage Guidelines (Oct. 28, 2015), https://perma.cc/E9DH-KYV4; ........................7

R.I. Off. Health Ins. Comm'r, *Health Ins. Bull. No. 2015-3: Guidance Regarding Prohibited Discrimination on the Basis of Gender Identity or Expression* (Nov. 23, 2015), https://perma.cc/MB57-YNBZ; ....................................................................8

UCLA Sch. of Law Williams Inst., *Shield Laws for Reproductive and Gender-Affirming Health Care: A State Law Guide* (Aug. 2024), https://perma.cc/Y2W5-EPD2..........................................................7

## INTERESTS OF AMICI STATES

In 2025, the Department of Justice ("DOJ") served numerous civil administrative subpoenas across the country on medical providers of transgender healthcare for minors. Courts have repeatedly quashed these subpoenas, finding they were part of a systematic campaign targeting transgender healthcare, served no legitimate investigatory purpose, were overly broad, harassing, and intrusive, jeopardized the health and welfare of state residents, and threatened to undermine the States' sovereign interest in regulating the practice of medicine.

DOJ now attempts to seek the same information through a federal grand jury subpoena from the U.S. Attorney's Office for the Northern District of Texas served on Lucile Salter Packard Children's Hospital at Stanford (Stanford Children's Hospital). The subpoena at issue here, which seeks identifying and sensitive personal healthcare information about minor patients, suffers from the same defects as the civil administrative subpoenas that courts have rejected.

The U.S. District Court for the Northern District of California (Pitts, J.) properly issued a preliminary injunction barring DOJ from seeking personal healthcare information from Stanford Children's Hospital. Accordingly, the States of California, Colorado, Connecticut, Delaware, Illinois, Maine, Maryland, Massachusetts, Minnesota, Nevada, New Jersey, New Mexico, New York, Oregon, Rhode Island, Vermont, Virginia, Washington, Wisconsin, and the District of

Columbia submit this brief in support of plaintiffs' opposition to DOJ's motion to stay the preliminary injunction pending appeal.

Amici States are home to hospitals, like Stanford Children's Hospital, that provide medically necessary care, including transgender healthcare, to thousands of people every year. These hospitals are at the forefront of biomedical research, and they fuel the amici States' economies by creating jobs, spurring innovation, improving residents' health, and training the workforce. Amici States have a strong interest in regulating the practice of medicine in their jurisdictions, including by licensing doctors and other medical professionals; and implementing and enforcing standards of care for a variety of medical treatments. Many amici States have enacted laws safeguarding access to transgender healthcare services and protecting people who lawfully provide or help others access such care. In these amici States' experience, those laws are necessary to uphold the rights and dignity of our transgender residents and the health and well-being of our communities.

Amici States thus have a strong interest in the preliminary injunction here. The federal grand jury subpoena seeks to intimidate medical providers into ceasing to offer lawful and medically necessary healthcare to transgender minors, one of the most vulnerable populations. Indeed, the subpoena places medical providers and hospital administrators in the crosshairs of criminal enforcement mechanisms merely for providing this care. If a stay were granted and providers like Stanford

Children's Hospital were forced to comply with this subpoena, it would threaten the health and welfare of the people of California and other amici States, impede core economic activities of amici States, and encroach on amici States' traditional role as the regulators of medicine.

## ARGUMENT

## THE DEPARTMENT OF JUSTICE SEEKS TO INTERFERE WITH AMICI STATES' AUTHORITY TO REGULATE THE PRACTICE OF MEDICINE

### A. States Have a Long History of Exercising Their Sovereign Powers to Regulate the Practice of Medicine

As sovereigns of their respective territories, States have the power to provide for the health, welfare, safety, and security of the people. *See Metro. Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 756 (1985); *see also Hillsborough Cnty., Fla. v. Automated Med. Lab'ys, Inc.*, 471 U.S. 707, 719 (1985). DOJ's relentless campaign against transgender healthcare—including by issuing the grand jury subpoena at issue—seeks to upend this fundamental principle.

The Tenth Amendment reserves for the States all rights and powers "not delegated to the " federal government. U.S. Const. amend. X. These traditional state police powers include the "power to protect the health and safety of their citizens." *Id.*; *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 475 (1996).

Since at least 1889, the states' authority to regulate the practice of medicine has been recognized as among these powers. *Dent v. West Virginia*, 129 U.S. 114, 122 (1889) (since "time immemorial," states have had discretion to set medical

licensing requirements). Though Congress may legislate to regulate interstate activities, the Executive may not adopt novel interpretations of statutes to disrupt a State's medical regulatory framework by inventing novel forms of criminal activity. *See Gonzales v. Oregon*, 546 U.S. 243, 269-70 (2006) (Controlled Substances Act did not prohibit Oregon doctors from prescribing medication for medical aid in dying authorized through ballot measure). Courts have upheld a broad set of "state medical practice laws against constitutional challenges, making clear that states are generally authorized to legislate in the medical practice area."[1]

States have exercised their power to regulate medicine in various ways. States define the scope of medical practice and require medical licenses for practitioners.[2] Since 1895, all States have boards that oversee the licensing of medical

[1] Patricia J. Zettler, *Toward Coherent Federal Oversight of Medicine*, 52 San Diego L. Rev. 427, 448 (2015); s*ee also Hillsborough Cnty.*, 471 U.S. at 719 ( "regulation of health and safety matters is primarily, and historically, a matter of local concern"); *Watson v. Maryland*, 218 U.S. 173, 176 (1910); *Gonzales v. Carhart*, 550 U.S. 124, 157 (2007) ("Under our precedents it is clear the State has a significant role to play in regulating the medical profession."); *Barsky v. Board of Regents*, 347 U.S. 442, 451 (1954) (indicating that the state has "legitimate concern for maintaining high standards of professional conduct" in the practice of medicine); *Buckman v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 348 (2001) (identifying "historic primacy of state regulation of matters of health and safety").

[2] Zettler, *supra* note 1, at 449-50 (citing Robert I. Field, *Health Care Regulation in America: Complexity, Confrontation, and Compromise* (2007) 19).

professionals.[3] Fundamental and consistent requirements for obtaining a medical license across states include graduation from an accredited medical school, completing one or more years of residency or fellowship, and passing a licensing examination.[4] Additional requirements may include interviews, documented lack of criminal history, and medical malpractice insurance coverage.[5] States, through their legislatures and regulatory boards, also regulate medical practice by disciplining licensees who act illegally or unethically or who violate standards of care, and by directly regulating how licensed practitioners may conduct medical practice.[6]

### B. California and Many Other Amici States Have Exercised Their Police Powers to Protect Access to Transgender Healthcare

States have also exercised their police powers to protect vulnerable groups against discrimination and to ensure equal access to healthcare. Consistent with state policy judgments about protecting minority populations and prohibiting

[3] Zettler, *supra* note 1, at 450 (citing Robert C. Derbyshire, *Medical Licensure and Discipline in the United States* 8 (1969)); *see also* Federation of State Medical Boards, *Contact a State Medical Board*, https://www.fsmb.org/contact-a-state-medical-board (last visited June 11, 2026).

[4] Zettler, *supra* note 1, at 450 (citing Nadia N. Sawicki, *Character, Competence and the Principles of Medical Discipline*, 13 J. Health Care L. & Pol'y 285, 290 (2010)).

[5] *Id.*

[6] *Id.* at 450–52.

discrimination, California and many other amici States have enacted civil rights protections for transgender people in education, employment, healthcare, housing, public accommodations, and other parts of public life.[7]

California and many other amici States have also taken steps to safeguard access to transgender healthcare, exercising their sovereign judgment that such safeguards promote public health and wellbeing. For instance, they recognize a legal right to transgender healthcare and have enacted laws to protect people in their States who access, provide, or assist with the provision of that care from civil or criminal penalties by out-of-state jurisdictions that outlaw it.[8] Many amici

---

[7] *E.g.*, Cal. Civ. Code §§ 51(b), 51(e)(6); Cal. Gov't Code §§ 12940(a), 12955; Md. Code Ann., Educ. § 26-704; Conn. Gen. Stat. §§ 10-15c, 46a-58 *et seq*.; Del. Code tit. 6, ch. 45 & 46; Del. Code tit. 19, ch. 7; D.C. Code § 2-1401.01 *et seq*.; 775 Ill. Comp. Stat. 5/1-102(A), 5/1-103(O-1), 5/1-103(Q); Me. Rev. Stat. tit. 5, § 4551 *et seq*.; Md. Code Ann., State Gov't §§ 20-606, 20-705; Mass. Gen. Laws ch. 151B, § 4; Mass. Gen. Laws ch. 272, §§ 92A, 98; Mich. Comp. Laws § 37.2202(1)(a); Minn. Stat. §§ 363A.03, subd. 50, 363A.01 *et seq*.; Nev. Rev. Stat. §§ 118.100, 284.150(3), 439.994, 449.101(1), 613.330; N.J. Stat. Ann. §§ 10:5-1 *et seq*., 17:48-6oo, 18A:36-41; N.Y. Const. Art. 1 § 11; N.Y. Exec. Law §§ 296-a, 296-b; N.Y. Civ. Rights Law § 40-c; N.Y. Comp. Codes R. & Regs. tit. 9, § 466.13; Or. Rev. Stat. §§ 659A.006, 659A.030, 659A.403, 659A.421; R.I. Gen. Laws §§ 11-24-2, 28-5-5, 28-5.1-12, 28-6-18, 34-37-2, 34-37-4, 34-37-4.3, 34-37-5.2, 34-37-5.3, 34-37-5.4; Vt. Stat. Ann. tit. 9, §§ 4502, 4503; Vt. Stat. Ann. tit. 21, § 495; Wash. Rev. Code §§ 49.60.030(1), 49.60.040(2), 49.60.040(29), 49.60.215.

[8] *E.g.*, Cal. Civ. Code § 56.109; Colo. Rev. Stat. §§ 10-16-121(1)(f), 13-21-133, 16-3-102, 16-3-301; Conn. Gen. Stat. §§ 19a-17e, 52-146w, 52-571m; 735 Ill. Comp. Stat. 40/28-5 *et seq*.; Me. Rev. Stat. tit. 14, § 9001 *et seq*.; Me. Rev. Stat. tit. 22, §§ 1508; Md. Code Ann., State Pers. & Pens. § 2-312; Mass. Gen. Laws ch.
(continued…)

States, including California, also cover transgender healthcare through their State Medicaid programs,[9] and they prohibit State-regulated health insurance plans from withholding coverage from individuals based on their gender identity or their diagnosis of gender dysphoria, thereby ensuring that transgender residents enjoy

---

12, § 11I½(b)-(d); Mass. Gen. Laws ch. 147, § 63; Mass. Gen. Laws ch. 276, § 13; 2023 Minn. Laws ch. 29; Minn. Stat. § 260.925; N.Y. Exec. Law § 837-x; N.Y. C.P.L.R. §§ 3119, 3102, 4550; N.Y. Fam. Ct. Act § 659, N.Y. Civ. Rights Law § 70-b; N.Y. Comp. Codes R. & Regs. tit. 10, § 405.7(c)(2); Or. Rev. Stat. §§ 15.430, 24.500, 414.769, 435.210, 435.240; Vt. Stat. Ann. tit. 12, § 7301 *et seq*.; Wash. Rev. Code § 7.115 *et seq.*; N.J.A.C. Executive Order No. 326 (2023); *see also* UCLA Sch. of Law Williams Inst., *Shield Laws for Reproductive and Gender-Affirming Health Care: A State Law Guide* (Aug. 2024), https://perma.cc/Y2W5-EPD2.

[9] *E.g.*, Cal. Welf. & Inst. Code § 14197.09; Cal. Dept. of Health Care Services, *Medically Necessary Gender-Affirming Care Services Covered for Medi-Cal Members* (May 7, 2025), https://mcweb.apps.prd.cammis.medi-cal.ca.gov/news/33457; Ill. Admin. Code tit. 89, §§ 140.413(a)(16), 140.440(h); Md. Code Ann., Health-Gen. § 15-151; MassHealth, *Gender-Affirming Care Covered by MassHealth*, https://perma.cc/YC87-7ZPH (last visited June 11, 2026); Mich. Dep't of Health & Human Servs., *Med. Servs. Admin. Bull. No. 19-06: Compliance with Federal Nondiscrimination Provisions* (Mar. 1, 2019), https://perma.cc/38YL-FWUQ; Mich. Dep't of Health & Human Servs., *Med. Servs. Admin. Bull. No. 21-28: Coverage of Gender Affirmation Services* (Sept. 30, 2021), https://perma.cc/96GE-9GFZ; Minn. Stat. § 256B.0625, subd. 3a; Nev. Medicaid Servs. Manual § 608 (May 27, 2026), https://perma.cc/B634-8HLU; N.Y. Comp. Codes R. & Regs. tit. 18, § 505.2(l); R.I. Gender Dysphoria/Gender Nonconformity Coverage Guidelines (Oct. 28, 2015), https://perma.cc/E9DH-KYV4; Vt. Stat. Ann. tit. 8, § 4071.

the same coverage for medically necessary treatment as residents who are not transgender.[10]

Similarly, many amici States have enacted laws that make clear that performing transgender healthcare, within the scope of a provider's practice, cannot by itself be considered professional misconduct, as well as laws that shield medical providers from facing professional discipline based solely on an out-of-state conviction or adverse license action resulting from the provision of transgender healthcare.[11] Relatedly, some amici States bar medical malpractice

---

[10] *E.g.*, Cal. Code Regs. tit. 10, § 2561.2(a); Code Colo. Regs. §702-4, Reg. 4-2-42, § 5(A)(1)(o); Del. Code tit. 18, §2304; 215 Ill. Comp. Stat. 5/356z.60(b); Ill. Admin. Code tit. 50, § 2603.35; Me. Rev. Stat. tit. 22, § 3174-MMM; Md. Code Ann., Ins. § 15-1A-22; Mass. Gen. Laws ch. 272, §§ 92A, 98; Minn. Stat. § 62Q.585; N.J. Stat. Ann. § 17:48-6oo; N.Y. Comp. Codes R. & Regs. tit. 11, § 52.75; Or. Admin. R. 836-053-0441; R.I. Off. Health Ins. Comm'r, *Health Ins. Bull. No. 2015-3: Guidance Regarding Prohibited Discrimination on the Basis of Gender Identity or Expression* (Nov. 23, 2015), https://perma.cc/MB57-YNBZ; Vt. Stat. Ann. tit. 8, §§ 4071, 4724; Mass. Div. of Ins., *Bull. No. 2021-11: Prohibited Discrimination on the Basis of Gender Identity or Gender Dysphoria Including Medically Necessary Gender Affirming Care and Related Services* (Sept. 9, 2021), https://www.mass.gov/lists/doi-bulletins; Mass. Div. of Ins., *Bull. No. 2014-03: Guidance Regarding Prohibited Discrimination on the Basis of Gender Identity or Gender Dysphoria Including Medically Necessary Transgender Surgery and Related Health Care Services* (June 20, 2014), https://www.mass.gov/lists/doi-bulletins.

[11] *E.g.*, Cal. Bus. & Prof. Code §§ 850.1, 852; Conn. Gen. Stat. §§ 19a-17e, 20-579a, 52-571m; Colo. Rev. Stat. § 12-30-121; Md. Code Ann., Health Occ. § 1-227; Mass. Gen. Laws ch. 112, §§ 5F½, 77, 128; N.Y. Educ. Law § 6531-b; Or. Rev. Stat. §§ 675.070, 675.540, 675.745, 677.190, 678.138, 685.110, 689.405; 225 Ill. Comp. Stat. 60/22(C); R.I. Gen. Laws § 5-37.8-1.

insurers from taking adverse action against medical professionals simply because they provide transgender healthcare.[12] California Civil Code § 1798.301 further provides that "gender-affirming health care services, and gender-affirming mental health care services are rights secured by the Constitution and laws of California[]" and that "[i]nterference with these rights . . . is against the public policy of California." Cal. Civ. Code § 1798.301. To this end, California also mandates training for healthcare professionals to ensure that patients who identify as transgender, gender diverse, and intersex receive trans-inclusive care.[13]

Taken together, these laws and policies reflect many amici States' commitment to preserving the medical profession's integrity, protecting the equality of all people, and ensuring that people with gender dysphoria are not denied medically necessary healthcare. In the experience of many amici States, these laws and policies are essential to address long-standing inequities in the healthcare system. These laws and policies adhere to medical standards of care and respect the doctor-patient relationship, thereby preserving the medical profession's integrity and ethics. More importantly, these laws result in better health outcomes

---

[12] *E.g.*, N.Y. Ins. Law § 3436-a; Colo. Rev. Stat. § 10-4-109.6(1); Or. Rev. Stat. § 676.313; 225 Ill. Comp. Stat 60/23(A)(3).

[13] *E.g.*, Cal. Ins. Code § 10133.13.

for transgender adolescents, safeguarding their physical, emotional, and financial wellbeing.

Despite no federal law prohibiting such care, the apparent purpose of the subpoena to Stanford Children's Hospital is the same as the pretextual basis for DOJ's civil subpoenas: to end medically necessary transgender healthcare for adolescents. The grand jury and civil subpoenas seek substantially similar patient-identifying information. And, as federal courts across the country have held with respect to DOJ's civil subpoenas, sweeping requests for sensitive patient-identifying health information—including records of all patients who have received a particular type of medical care—appear to represent a radical departure from DOJ's prior practice and make express the "policy goal" of the Executive Branch to harm a politically disfavored minority. *See, e.g.*, *In re Boston Children's Hospital Subpoena*, 2025 WL 2607784 at *7 (D. Mass. Sep. 9, 2025) ("It is abundantly clear that the true purpose of issuing the subpoena is to interfere with the Commonwealth of Massachusetts' right to protect [transgender healthcare] within its borders, to harass and intimidate BCH to stop providing such care, and to dissuade patients from seeking such care."). As one court concluded, DOJ's systematic campaign against transgender healthcare "directly conflict[s] with Plaintiff States' laws protecting transgender adolescents' access to gender-affirming care, which were enacted in exercise of Plaintiff States' traditional

authority to pass laws regulating medicine and to safeguard its citizens health and welfare." *Massachusetts v. Trump*, 2026 WL 1584837, at *23 (D. Mass. June 3, 2026). DOJ's subpoena to Stanford Children's Hospital is an extraordinary attempt to subvert the policy and considered judgment of the States as the traditional regulators of the practice of medicine.

## CONCLUSION

This Court should deny appellants' motion for a stay.

Dated: August 17, 2026

Respectfully submitted,

ROB BONTA
*Attorney General of California*
Neli N. Palma
*Senior Assistant Attorney General*
Nimrod Pitsker Elias
*Supervising Deputy Attorney General*

*/s/ Crystal Adams*
*Deputy Attorney General*

PHILIP J. WEISER
*Attorney General*
*State of Colorado*
1300 Broadway 10th Fl.
Denver, CO 80203

KWAME RAOUL
*Attorney General*
*State of Illinois*
115 S. LaSalle Street
Chicago, IL 60603

WILLIAM TONG
*Attorney General*
*State of Connecticut*
165 Capitol Avenue
Hartford, CT 0610

AARON M. FREY
*Attorney General*
*State of Maine*
6 State House Station
Augusta, ME 04333

KATHLEEN JENNINGS
*Attorney General*
*State of Delaware*
820 N. French Street
Wilmington, DE 19801

ANTHONY G. BROWN
*Attorney General*
*State of Maryland*
200 Saint Paul Place
Baltimore, MD 21202

BRIAN L. SCHWALB
*Attorney General*
*District of Columbia*
400 6th St., N.W., Ste. 8100
Washington, D.C. 20001

ANDREA JOY CAMPBELL
*Attorney General*
*Commonwealth of Massachusetts*
One Ashburton Place
Boston, MA 02108

KEITH ELLISON
*Attorney General*
*State of Minnesota*
102 State Capitol
75 Rev. Dr. Martin Luther King Jr. Blvd.
St. Paul, MN 55155

AARON D. FORD
*Attorney General*
*State of Nevada*
100 North Carson Street
Carson City, NV 89701

JENNIFER DAVENPORT
*Attorney General*
*State of New Jersey*
25 Market Street
Trenton, NJ 08625

RAÚL TORREZ
*Attorney General*
*State of New Mexico*
408 Galisteo Street
Santa Fe, NM 87501

LETITIA JAMES
*Attorney General*
*State of New York*
28 Liberty Street
New York, NY 10005

DAN RAYFIELD
*Attorney General*
*State of Oregon*
1162 Court Street N.E.
Salem, OR 97301

PETER F. NERONHA
*Attorney General*
*State of Rhode Island*
150 South Main Street
Providence, RI 02903

CHARITY R. CLARK
*Attorney General*
*State of Vermont*
109 State Street
Montpelier, VT 05609

JAY JONES
*Attorney General*
*Commonwealth of Virginia*
202 North Ninth Street
Richmond, VA 23219

NICHOLAS W. BROWN
*Attorney General*
*State of Washington*
P.O. Box 40100
Olympia, WA 98504

JOSHUA L. KAUL
*Attorney General*
*State of Wisconsin*
State Capitol, Room 114 East
P. O. Box 7857
Madison, WI 53707

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** 26-4388

I am the attorney or self-represented party.

**This brief contains** 2,589 **words,** including 0 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

○ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

● is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
- ☐ it is a joint brief submitted by separately represented parties.
- ☐ a party or parties are filing a single brief in response to multiple briefs.
- ☐ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated ________.

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** /s/ Crystal Adams **Date** 8/17/2026

*(use "s/[typed name]" to sign electronically-filed documents)*